LAVENSTEIN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7221.    Promulgated April 29, 1927.

Affiliation denied.

*Richard H. Mann, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

The Commissioner has asserted deficiencies in income and profits taxes for the years 1919 and 1920, in the respective amounts of $2,311.69 and $339.49.  The only question at issue is whether the petitioner was affiliated with the Lavenstein Bros. Co., Inc., during the taxable years, and entitled to have its tax liability computed on the basis of a consolidated return for each of such years.

FINDINGS OF FACT.

The petitioner is a Virginia corporation, with its principal office at Petersburg.  It was incorporated in March, 1917, with authorized capital of $25,000, divided into 2,500 shares of the par value of $10, each, all of which was issued in equal proportions to M. E. Lavenstein, H. H. Lavenstein, and A. L. Lavenstein.  At the date of its incorporation it took over the cash and miscellaneous assets of the Lavenstein Bros. Co., Inc., and thereafter conducted the general merchandise business theretofore operated first by Lavenstein Brothers, a partnership, and later by Lavenstein Bros. Co., Inc.

Lavenstein Bros. Co., Inc., is a Virginia corporation, with its principal office at Petersburg.  It was organized on April 13, 1915, with authorized capital of $50,000, divided into 500 shares of the par value of $100, each, all of which was issued in equal proportions to M. E. Lavenstein, H. H. Lavenstein, and A. L. Lavenstein, in exchange for all the assets and subject to all the liabilities of the business theretofore conducted by the three Lavensteins as equal partners, and hereinafter referred to as the partnership.

On November 26, 1913, the stock and fixtures of the partnership were destroyed by fire.  The insurance companies in which the partnership held fire insurance policies denied liability for the fire losses.

The partnership thereupon brought suit for the recovery of the amounts of coverage represented by their fire insurance policies, and, after several years of litigation, secured judgment for the full amount of the claims, and such judgment was paid in cash prior to June 1, 1920.

The refusal of the insurance companies to pay the losses sustained from the destruction of the stock and fixtures made it impossible for the partnership to pay bank loans and accounts for merchandise purchased from certain wholesale merchants. With such obligations in its financial statement offset only by a disputed claim against fire insurance companies, the partnership had great difficulty in financing its business and in securing credit from wholesale houses.

On April 13, 1915, Lavenstein Bros. Co., Inc., was organized as set forth above, and at once entered into the following agreement with the three Lavensteins and the representatives of the creditors of the partnership:

AGREEMENT made this 24th day of April, 1915, by and among M. E. Lavenstein, Harry H. Lavenstein, and Abraham L. Lavenstein, of the City of Petersburg, in the State of Virginia, parties of the first part, the National Bank of Petersburg, Virginia, The Southern Dry Goods and Notion Co., Incorporated, and A. Wright Co. all of the City of Petersburg, in the State of Virginia; the Richmond Dry Goods Co., Incorporated, and Kaufman & Co., of the City of Richmond, in the State of Virginia, The Baltimore Bargain House, and Schloss Bros. & Co. of the City of Baltimore, in the State of Maryland, parties of the second part, and Lavenstein Brothers Company, Inc., of the City of Petersburg, in the State of Virginia, party of the third part:

WHEREAS the parties of the first part are all of the stockholders of Lavenstein Brothers Co. Incorporated, engaged in the business of buying and selling general merchandise, with its place of business in the City of Petersburg, in the State of Virginia, with a paid up capital stock of $50,000.00, and,

WHEREAS the parties of the second part are the largest creditors of the said parties of the first part, heretofore trading as partners under the firm name of Lavenstein Brothers, and which said indebtedness and other indebtedness of said Lavenstein Brothers has been assumed by the party of the third part; and,

WHEREAS the parties of the first part, and the party of the third part desire further time for the payment of the indebtedness due and owing to the said parties of the second part, and to assure and secure the payment of said debts by a transfer and assignment of all of the capital stock of the said Lavenstein Bros. Co. Incorporated, excepting two shares thereof, and the control, management and direction of said business under the terms and conditions hereinafter set forth;

NOW THEREFORE, in consideration of the premises and the sum of $1.00 lawful money of the United States, each to the other in hand paid, the receipt of which is hereby acknowledged, and in consideration of the undertakings by the parties of the second part as herein provided, it is agreed as follows:

FIRST

The said parties of the first part shall transfer, assign and deliver to E. E. Hinckle, B. F. Caston, and Samuel Burwell 498 shares of the paid up capital

stock of Lavenstein Brothers·Co. Incorporated for the joint use and benefit of the parties of the second part, in the following amounts, namely:

|  | Shares |
|---|---|
| E. E. Hinckle | 168 |
| B. F. Caston | 165 |
| Samuel Burwell | 165 |

the remaining two shares of the paid up capital stock to be retained by M. E. Lavenstein and Abraham L. Lavenstein, one share each, for the purpose of conducting the business, and to be held under the terms and conditions of this agreement.

#### SECOND

That for the indebtedness due and owing to the parties of the second part, said Lavenstein Brothers Co. Incorporated, has executed and delivered to the several parties of the second part, their several promissory notes bearing even date herewith, and payable three months after date in the following amounts, respectively:

| | |
|---|---|
| To the National Bank of Petersburg, one note for | $31, 250. 00 |
| To Virgina National Bank of Petersburg, one note for | 20, 000. 00 |
| To Richmond Dry Goods Co. of Richmond, one note for | 13, 001. 85 |
| To Kaufman & Co. of Richmond, one note for | 3, 694. 02 |
| To Baltimore Bargain House of Baltimore, one note for | 16, 543. 12 |
| To Schloss Bros. & Co. of Baltimore, one note for | 11, 489. 04 |
| To Southern Dry Goods and Notion Co. of Petersburg, one note for | 5, 512. 45 |
| To A. Wright & Co. of Petersburg, one note for | 2, 043. 04 |

each and all of said notes being personally endorsed by said parties of the first part, and such other endorsements as are now had by any of the said parties of the second part. And it is expressly understood and agreed that such notes shall be renewed or extended until January 1st, 1916, or until the prior termination of this agreement:

#### THIRD

The absolute control and management of all of the stock of merchandise, and all furniture and fixtures, notes and accounts receivable, and other personal property of every character and description and all of the real estate heretofore transferred, and now owned by Lavenstein Brothers Co. Incorporated, shall be turned over and delivered to the said E. E. Hinckle, B. F. Caston and Samuel Burwell, who shall be elected Directors of the said Lavenstein Brothers Co. Incorporated, together with the said M. E. Lavenstein and Abraham L. Lavenstein.

#### FOURTH

The parties of the first part further agree that the parties of the second part, by and through said E. E. Hinckle, B. F. Caston, and Samuel Burwell, or such others as may be nominated to take their places, shall have the absolute and exclusive right to determine the manner in which the said business shall be conducted, and the policies which shall be adopted for the conduct of said business, free from any interference by the parties of the first part, until all of the expenses that may be incurred by the parties of

the second part, or by said E. E. Hinckle, B. F. Caston and Samuel Burwell, and all of the obligations contracted in such business and all indebtedness due and owing to the parties of the second part has been fully paid off, satisfied and discharged; and that the business shall be conducted as long as they may deem proper and right and until January 1st, 1916, if the same can be done, in their judgment, without suffering any loss, and that they will manage and conduct said business according to their best business judgment.

The Parties further agree that during the term the said business is in operation as herein provided, under the control and direction of the parties of the second part, sales shall be made only in the course of regular retail trade for cash, and no sales shall be made on credit except with the approval and consent in writing of the Secretary of the Corporation, and such sales shall be made so as to realize a fair profit, over and above the cost price of the merchandise except when otherwise determined by the Board of Directors, and at any time after January 1st, 1916, or after such time as this contract may be terminated prior to January 1st, 1916, said E. E. Hinckle, B. F. Caston and Samuel Burwell or their successors for and on behalf of the parties of the second part shall have and reserve the privilege of selling the stock of merchandise, furniture and fixtures, real estate and all the assets of every character and description of said Corporation in such a manner and on such terms as they may deem proper and believe will bring the most net cash for same, and out of the proceeds therefrom they shall first pay all expenses and prior debts and debts contracted by the corporation after date of this agreement, and the balances then due to the parties of the second part, with accrued interest, and the remainder if any, to be paid to the parties of the first part, their legal representatives or assigns.

### FIFTH

The employment of the parties of the first part as President, Vice-President, Secretary, and of Miss Maggie Hutchinson as Assistant Secretary during the term of this agreement, is based upon the express condition that they and each of them devote their entire time and attention to the business of the corporation under the direction and supervision of the Board of Directors. And if they, or either of them, fail to discharge their duties in good faith as required by their employment they, or either, or all of them, may be discharged by the Board of Directors at any special meeting for such purpose, or by direction of said E. E. Hinckle, B. F. Caston and Samuel Burwell, or their successors, it being further stipulated and agreed that all purchases of merchandise in conducting said business shall be approved and confirmed by E. E. Hinckle, B. F. Caston, and Samuel Burwell, or either of them.

The salaries of the President, Vice-President, Secretary and Assistant Secretary and all of the employees of the corporation shall be fixed and approved by the Board of Directors. Said E. E. Hinckle, B. F. Caston and Samuel Burwell shall receive no compensation for their services but shall be reimbursed for any and all expenses that may be incurred by them.

### SIXTH

The Treasurer shall have the supervision of the finances of the business, and shall make all of the deposits of the said corporation in the National Bank of Petersburg, and Virginia National Bank in such proportion as he may deem proper; all checks drawn against such bank accounts shall be signed by the President, and countersigned by the said Treasurer, or in his absence, by Samuel Burwell.

79705°—28——72

The Assistant Secretary shall also make weekly detailed reports of the business, showing the daily sales for cash and on credit, expenses, disbursements for purchases of merchandise, and payments otherwise, and all details pertaining to the business, said reports to be made in triplicate, one thereof being kept in the files in the office of the Corporation, one to be forwarded to B. F. Caston, 500 W. Baltimore St., Baltimore, Md., and the third to be retained by the Treasurer in his office in Richmond, Virginia; and with such reports the Assistant Secretary shall send the Treasurer such checks as may be required to pay for merchandise purchases, general expenses, and other essentials, the pay roll of the employees and checks for the residue of receipts shall be made payable to the several parties of the second part in proportion to their respective claims.

### SEVENTH

It is further agreed that on ten days' notice at any time before January 1st, 1916, or before the prior termination of this agreement, the parties of the first part may pay to the parties of the second part the amounts due and owing to them respectively, and upon such payments the parties of the second part agree to have transferred, reassigned and delivered to the parties of the first part all of the assets remaining on hand unsold and uncollected of said corporation, together with the capital stock thereof held by them or for their benefit, and any other or further securities held by any of them for the payment of their respective claims.

In the event of the liquidation of the business of Lavenstein Brothers Co. Incorporated, by sale or otherwise, on or before January 1st, 1916, or at any time thereafter, any of the parties of the second part holding securities or collateral shall dispose of such securities or collateral for cash either at public or private sale for the best price they can obtain for the same, at such time and place as may suit their convenience, and said parties shall participate in the proceeds of the sale of the assets of the corporation to the extent of the remainder that may be due and owing them. Ten days' notice of such sale shall be given in writing to the corporation by registered mail.

If, on January 1st, 1916, the fire insurance policies of Lavenstein Brothers, for which suits are pending and which were transferred to Lavenstein Brothers Co. Incorporated, subject to the rights, uses and purposes for which said policies are held by B. F. Caston and the Virginia National Bank, have not been settled or collected, or their validity fully determined, this agreement may be continued on the same terms and conditions for such further time as may be mutually agreed upon by all of the parties of the second part with the parties of the first part.

Nothing herein stated or contained shall limit or restrict the right of such of the parties of the second part as now hold securities or collateral for all or any part of the indebtedness owing to them by the parties of the first part to retain such collateral or securities for such indebtedness, their right thereto being hereby expressly confirmed and recognized, and the proceeds of any such collateral or securities that may be received prior to January 1st, 1916, or the earlier termination of this agreement shall be applied by the holder of such collateral or securities as payment on account of their respective notes.

The said E. E. Hinckle, B. F. Caston, and Samuel Burwell join in the execution of this agreement to signify their consent and willingness to perform the duties required of them in good faith, but should they or any of them for any reason be unable to perform such duties then, in such an event, a successor or successors shall be named with the consent in writing of a majority, of the

parties of the second part, and such successor or successors shall have the same rights, powers and obligations herein given to said E. E. Hinckle, B. F. Caston and Samuel Burwell.

### EIGHTH

The terms and conditions of this agreement are approved, ratified and confirmed by resolution of the Board of Directors of Lavenstein Brothers Co. Incorporated, and the President and Secretary thereof authorized to execute same on behalf of the Corporation, and the conditions of this agreement shall extend to and be binding upon all the parties hereto, and their administrators, successors, and assigns.

Nothing herein contained shall, in any wise, affect the agreement heretofore made in connection with the loan of $10,000.00 to the said Lavenstein Brothers by or through Schloss Brothers & Co.

In March, 1917, it became necessary to make some further arrangements to protect the interests of the creditors and enable the Lavenstein Corporation to carry on its business. Accordingly the petitioner was organized as hereinbefore set forth and took over from the Lavenstein Bros. Co., Inc., certain properties designated as live assets. Thereafter, the Lavenstein Bros. Co., Inc., retained only the real estate and the claims against the insurance companies as its assets, and the claims of the creditors as enumerated in the agreement above set forth as its liabilities. On March 19, 1917, Lavenstein Bros. Co., Inc., leased the building to which it retained title to the petitioner for a rental of $5,400 per annum. Thereafter, it held no stockholders' or directors' meetings and transacted no further business until it prevailed in its suit against the insurance companies prior to June 1, 1920.

From the date of its incorporation the petitioner paid all the expenses of operating Lavenstein Bros. Co., Inc., kept the accounts of such corporation in its own books of account and paid the taxes on its real estate. On June 1, 1920, in conformity with judgment rendered by the Supreme Court of Virginia, Lavenstein Bros. Co., Inc., received in cash the full amount of the disputed insurance claims, and immediately paid in full all the obligations due banks and other creditors as set forth above. Thereupon the nominees of the creditors' committee assigned the stock standing in their name to the Lavenstein brothers in equal proportions, and in all other respects carried out the terms of the agreement entered into on April 24, 1915.

The petitioner and the Lavenstein Bros. Co., Inc., made a consolidated income and profits-tax return for each of the years 1919 and 1920. Upon audit of such returns the respondent disallowed affiliation for the year 1919, and the period from January 1 to June 1, 1920, and determined the deficiencies here in question.

OPINION.

LANSDON: The only question here is whether the petitioner and Lavenstein Bros. Co., Inc., were affiliated during the taxable years. This issue must be determined by ascertaining the ownership of the shares of the capital stock of Lavenstein Bros. Co., Inc., which were held by the nominees of the creditors during the period in controversy. This stock was issued in equal proportions to the Lavenstein brothers, and, in conformity with the agreement which we have incorporated in our findings of fact, was assigned to nominees of the creditors' committee, was reissued to such nominees, and stood in their names during the time here involved.

The petitioner contends that the actual ownership of the stock of Lavenstein Bros. Co., Inc., was, at all times, in the three Lavenstein brothers; that it was held by the nominees of the creditors' committee only as security for the debts listed in the agreement; and that by the terms of the agreement it could, at any time, have the stock transferred to it on the payment of the debts in question. Upon the facts we are unable to agree with these contentions. During the period in controversy, the stock was outstanding in the names of the nominees of the creditors' committee. Such nominees had complete control both of the stock and of operation of the business. The alleged actual owners of such stock had no record title to it and could acquire such title only by paying the debts in question in full, which they were unable to do at any time prior to the collection of the insurance policies. In these conditions we are of the opinion that, even if the Lavensteins had an equitable title to the stock in question, they were unable to exercise any of the powers of ownership or control.

*Judgment will be entered for the respondent.*

GREEN, PHILLIPS and TRUSSELL dissent.